# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1329
_____

United States of America

*Plaintiff - Appellee*

v.

Michael James Vore

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs
_____

Submitted: November 22, 2013
Filed: March 4, 2014 (Corrected June 4, 2014)
_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Following a jury trial, Michael James Vore was convicted of possession with intent to distribute five or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Vore appeals the district court's[1] denial of his motion to

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Appellate Case: 13-1329    Page: 1    Date Filed: 06/04/2014 Entry ID: 4161306

suppress, his motion for judgment of acquittal, and his motion for a new trial. We affirm.

## I. Background

On May 7, 2011, officers with the Iowa State Patrol were conducting surveillance of a residence where, based on a tip from a confidential informant, they suspected the presence of stolen trailers. The officers observed two individuals hook a dump trailer to the back of a pick-up truck. One of the individuals, later identified as Vore, then drove the truck and the trailer off of the property. Trooper John Hitchcock contacted Trooper Craig Zenor and instructed him to find probable cause to stop the truck.

Trooper Zenor initiated a traffic stop after observing that the trailer did not have a visible license plate. Trooper Zenor asked Vore, who was alone in the truck, for his driver's license, an insurance card for the truck, and registration information for both the truck and the trailer. Vore provided Trooper Zenor with his driver's license and an insurance card for the truck, the latter of which was issued on December 31, 2010, but did not provide registration information for the truck or the trailer. Trooper Zenor observed that the vehicle identification number ("VIN") on the truck's insurance card and the VIN on the truck differed by one digit. Trooper Zenor also ran the truck's license plate number through the police databases and discovered that the truck was not registered to Vore. When asked how he had acquired the truck, Vore responded that he had purchased it from a friend who had lost the title. Trooper Zenor then ran the trailer's VIN through the police databases and learned that it had been reported stolen. Trooper Zenor also found a stray license plate in the trailer that was registered to another trailer that also had been reported stolen.

Other officers eventually joined Trooper Zenor at the scene of the traffic stop. Trooper Zenor informed them that the trailer had been reported stolen, and the officers

-2-

arrested Vore. Before Trooper Zenor could request a tow truck for the truck and the trailer, one of the other officers informed him that Vore had consented to having an officer drive the truck and the trailer to the station. A short time later, Trooper Zenor returned to the station and began a search of the truck. During his search, Trooper Zenor found what he described as a "metal work booklet" on the passenger's seat. Inside, he found $1,000 in cash, a glass pipe, an electronic scale, and methamphetamine. Continuing his search, Trooper Zenor opened the truck's console and found a bag that contained more cash and methamphetamine as well as small Ziploc bags.

A grand jury subsequently indicted Vore for possession with intent to distribute fifty grams or more of methamphetamine. At trial, Trooper Zenor testified about the traffic stop and his search of the truck. Trooper Zenor also testified that he found Vore's medication in the console of the truck. Vore's cellmate testified that he met Vore while in jail and that Vore admitted that he intended to use and sell the methamphetamine in the truck. Vore's cellmate, who was serving a sentence for federal charges at the time of his testimony, told the jury that he hoped the Government would recommend a reduction in his sentence based upon his testimony, although the Government had not promised that it would do so. A forensic chemist with the Drug Enforcement Administration also testified that the net weight of the methamphetamine in the truck was 59.1 grams at 85.3% purity. A special agent with the Iowa Division of Narcotics Enforcement testified that a methamphetamine user generally uses between 0.5 grams and 1.5 grams of methamphetamine per day and that, based upon his experience, the amount of drugs in the truck was consistent with methamphetamine distribution.

Vore was convicted of the lesser included charge of possession with intent to distribute five or more grams of methamphetamine. The district court subsequently sentenced Vore to 120 months' imprisonment. Vore now appeals.

-3-

## II. Discussion

### A. Motion to Suppress

Vore first argues that the district court erred by denying his motion to suppress the drugs, cash, and other items that Trooper Zenor found in the truck. When reviewing a district court's denial of a motion to suppress, "factual findings are reviewed for clear error, and legal conclusions are reviewed *de novo*." *United States v. Farnell*, 701 F.3d 256, 260 (8th Cir. 2012).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). Of relevance here, the "automobile exception" permits the warrantless search of a vehicle if the police "had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003) If the automobile exception applies, the vehicle need not be searched immediately. *United States v. Castaneda*, 438 F.3d 891, 894 (8th Cir. 2006). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005). In making the probable-cause determination, we "apply a common sense approach and consider all relevant circumstances." *Id.*

Trooper Zenor had probable cause to search the truck. The truck was towing a trailer for which Vore did not provide registration information, that lacked a visible license plate, and that had been reported stolen. The trailer, moreover, contained a license plate registered to another trailer that had been reported stolen. Furthermore, the truck and the trailer had just left a residence where the police suspected the

-4-

presence of stolen trailers—a fact known to Trooper Zenor at the time of the search. In light of these facts and considering the totality of the circumstances, Trooper Zenor had probable cause to search the truck. Based upon the truck's nexus to both Vore and the trailers, there was a fair probability that the truck contained evidence related to the ownership status and the theft of the trailers. Accordingly, pursuant to the automobile exception, Trooper Zenor did not need a warrant to search the truck. *Wells*, 347 F.3d at 287. This probable cause allowed Trooper Zenor to search inside the metal work booklet and inside the truck's console as well, both of which could have contained information related to the ownership status and the theft of the trailers. *See United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."). We therefore affirm the denial of Vore's motion to suppress.

## B. Sufficiency of the Evidence

Vore next argues that the district court erred by denying his motion for judgment of acquittal because the Government did not present sufficient evidence for a reasonable jury to convict him. We review *de novo* a district court's denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor. *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004). "'This standard is quite strict' and the court will not disturb the conviction unless 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Wright*, 739 F.3d 1160, 1167 (8th Cir. 2014) (quoting *Serrano-Lopez*, 366 F.3d at 634) (internal citation omitted).

To convict Vore, the Government had to prove beyond a reasonable doubt that Vore knowingly possessed the methamphetamine in the truck with the intent to distribute it. *See United States v. Timlick*, 481 F.3d 1080, 1082 (8th Cir. 2007)

-5-

(discussing 21 U.S.C. § 841(a)(1)). Vore first argues that the Government did not present sufficient evidence for a reasonable jury to conclude that he knowingly possessed the methamphetamine. Knowing possession can be either actual or constructive. *Serrano-Lopez*, 366 F.3d at 634. To prove constructive possession, the Government must establish that Vore had "knowledge and ownership, dominion, or control over the contraband itself, or dominion over the vehicle in which the contraband is concealed." *Timlick*, 481 F.3d at 1083 (quoting *United States v. Johnson*, 470 F.3d 1234, 1238 (8th Cir. 2006)).

The Government presented ample evidence to permit a reasonable jury to find beyond a reasonable doubt that Vore knowingly possessed the methamphetamine in the truck. To begin with, Vore's cellmate testified that Vore admitted that he intended to sell and to use the methamphetamine in the truck. Although Vore's cellmate testified that he hoped that the Government would recommend a reduction in his sentence based upon his testimony, a reasonable jury could rely upon his testimony to infer knowing possession of the methamphetamine in the truck. *See United States v. Baker*, 367 F.3d 790, 798 (8th Cir. 2004) ("The fact that [a] witness[] testified in exchange for the possibility of [a] reduced sentence[] does not categorically make [his] testimony infirm or require that [his] testimony be corroborated in order to support a conviction."). Moreover, Vore was the driver and the sole occupant of the truck where the methamphetamine was found. *See, e.g., United States v. Chatmon*, --- F.3d ---, No. 13-1239, slip op. at 4 (8th Cir. Feb. 5, 2014) (finding constructive possession where defendant was the driver and sole occupant of a vehicle); *United States v. Tindall*, 455 F.3d 885, 887 (8th Cir. 2006) (same). Still further indicia of control and dominion are provided by Vore's possession of an insurance card for the truck, issued more than four months earlier, as well as the presence of Vore's medication in the truck's console, where Trooper Zenor found some of the methamphetamine. From this evidence, a reasonable jury could conclude that Vore knowingly possessed the methamphetamine in the truck.

-6-

Vore next argues that the Government presented insufficient evidence for a jury to conclude beyond a reasonable doubt that he intended to distribute the methamphetamine. A reasonable jury could infer an intent to distribute the methamphetamine based upon Vore's cellmate's testimony that Vore intended to sell some of the methamphetamine in the truck. *See Baker*, 367 F.3d at 798. Furthermore, "[a] large quantity of drugs, standing alone, is sufficient evidence of . . . [an] intent to distribute." *Serrano-Lopez*, 366 F.3d at 635. Here, Trooper Zenor found 59.1 grams of methamphetamine at 85.3% purity. At trial, the jury heard testimony that this amount of methamphetamine was consistent with methamphetamine distribution. *See, e.g., United States v. Vega*, 676 F.3d 708, 715, 721 (8th Cir. 2012) (permitting an inference of an intent to distribute where the defendant knowingly possessed 8.6 grams of methamphetamine at 80% purity); *United States v. Fetters*, 698 F.3d 653, 657-68 (8th Cir. 2012) (permitting an inference of an intent to distribute where the defendant knowingly possessed 11.73 grams of methamphetamine at 73% purity). Moreover, the presence of cash and drug paraphernalia in the truck—an electronic scale and small Ziploc bags—further supports an inference of an intent to distribute the methamphetamine in the truck. *Vega*, 676 F.3d at 721; *United States v. Finch*, 630 F.3d 1057, 1061 (8th Cir. 2011). Viewing this evidence in the light most favorable to the verdict, there was more than sufficient evidence for a reasonable jury to conclude that Vore intended to distribute the methamphetamine. We thus affirm the denial of Vore's motion for judgment of acquittal.

Vore also argues that the district court erred by denying his motion for a new trial based upon the sufficiency of the evidence, a decision that we review for an abuse of discretion. *United States v. Johnson*, 474 F.3d 1044, 1050 (8th Cir. 2007). "[M]otions for new trials based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution." *Id.* at 1050-51. "A district court may grant a new trial for insufficiency of the evidence 'only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.'" *United States v. Lacey*,

-7-

219 F.3d 779, 783 (8th Cir. 2000) (quoting *United States v. Brown*, 956 F.2d 782, 786 (8th Cir. 1992)). After reviewing the evidence, we find no abuse of discretion in the district court's denial of Vore's motion for a new trial. Trooper Zenor's and Vore's cellmate's testimony at trial, together with the amount of methamphetamine and drug paraphernalia in the truck and the evidence of Vore's connection to the truck, convince us that no miscarriage of justice has occurred. We thus affirm the denial of Vore's motion for a new trial based upon the sufficiency of the evidence.

## C. Theory-of-Defense Instruction

Vore also argues that the district court erred by denying his motion for a new trial based upon the district court's refusal to give his theory-of-defense instruction. The denial of a motion for a new trial and the failure to give a defendant's proposed instruction are both reviewed for an abuse of discretion. *United States v. Goodwin*, 719 F.3d 857, 864 (8th Cir. 2013); *United States v. Ironi*, 525 F.3d 683, 688 (8th Cir. 2008).

"[A] defendant is entitled to a theory of defense instruction if it is timely requested, is supported by the evidence, and is a correct statement of the law . . . ." *United States v. Claxton*, 276 F.3d 420, 423 (8th Cir. 2002). However, a defendant is not entitled to a "particularly worded instruction." *Id.* Nor is he entitled to his theory-of-defense instruction "if the instruction actually given by the trial court adequately and correctly covers the substance of the requested instruction." *Id.* (quoting *United States v. Rederth*, 872 F.2d 255, 258 (8th Cir. 1989)). We evaluate the adequacy of the jury instructions by viewing them "as a whole and in the context of the trial." *Id.* at 424.

Vore asserts that the district court should have given his "mere presence" theory-of-defense instruction. The relevant portion of Vore's requested instruction reads:

-8-

[M]ere presence of a person where an item is found or mere proximity of a person to the item is insufficient to establish a person's "possession" of that item. The person must know of the presence of the item at the same time he or she has control over the item or the place where it was found.

The district court's actual instructions adequately and correctly conveyed the substance of Vore's "mere presence" instruction. Specifically, the actual instructions included the Eighth Circuit model instruction defining "possession," which explains that constructive possession requires "both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons." The unmistakable implication from this instruction is that something more than mere presence was required in order to convict Vore. Moreover, the district court instructed the jury on the elements of Vore's alleged offense and the burden of proof. Thus, as in *Serrano-Lopez*, "the giving of the mere-presence instruction in this case would have duplicated the instructions outlining the elements of the offense, the definition of possession, and the burden of proof." 366 F.3d at 637. We find no abuse of discretion in the district court's failure to give Vore's "mere presence" instruction and therefore affirm the district court's denial of Vore's motion for a new trial.

## III. Conclusion

For the reasons set forth above, we affirm.

———————————————

-9-